IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 99-10753
_____


JOEL F. ARNOLD; ET AL.,

                                Plaintiffs,

JOEL F. ARNOLD; ALLEN MCDANIEL,

                                Plaintiffs-Appellants,

                    v.

UNITED STATES DEPARTMENT OF THE INTERIOR,

                                Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Texas
_____

May 25, 2000

Before WIENER, BENAVIDES, and PARKER, Circuit Judges.

BENAVIDES, Circuit Judge:

    Appellants Joel Arnold ("Arnold") and Allen McDaniel
("McDaniel") appeal the district court's ruling as a matter of
law that neither of them was entitled to compensatory damages on
their claims for gender discrimination brought pursuant to 42
U.S.C. § 2000e-5.  They also complain that the trial court erred
when it granted the United States Department of the Interior's
("DOI") motion for summary judgment on their retaliation claim.
We affirm.

## I.  Factual and Procedural Background

Arnold and McDaniel, along with Bobby Maxwell ("Maxwell"), all worked in the Dallas Compliance Division of the Mineral Management Service ("MMS"), a division of the DOI.  Each applied for a GS-14 position as Supervisory Auditor in the Oklahoma City office, and each was placed on the "best qualified list."  On the basis of the numerical assessments of the candidates on the "best qualified" list (which numbers themselves had been derived from objective criteria), Gary Johnson ("Johnson"), the Chief of the Dallas Compliance Division of the MMS, interviewed Pam Reiger ("Reiger") and Maxwell, who had the highest and second-highest scores respectively.  On December 30, 1994, Johnson hired Reiger, who was an Asian-American woman.

Arnold, Maxwell, and McDaniel, all white men over the age of forty, filed administrative complaints on February 2, 1995, March 7, 1995, and March 8, 1995, respectively.  They each alleged that race, gender, and age discrimination prevented their being hired for the Supervisory Auditor position.  After a hearing on April 29-30, 1996, the administrative judge issued an opinion on June 10, 1996 concluding that Arnold, Maxwell, and McDaniel had presented direct evidence of gender discrimination: to wit, Johnson had marching orders to hire a woman.

By letter dated August 14, 1996, the MMS announced its final agency decision.  It adopted the administrative judge's finding

2

with respect to gender discrimination, but rejected its holding on the race and age discrimination claims, deciding that the evidence was insufficient. The MMS determined that Arnold, Maxwell, and McDaniel were entitled to compete in an unbiased selection process and resolved to reconduct the job search.

Arnold, McDaniel, and Maxwell filed suit on November 13, 1996. Sometime thereafter, Reiger requested and received a transfer. Johnson selected Maxwell to replace Reiger.[1] Johnson then penned a justification memorandum, which Jim Shaw ("Shaw"), the Associate Director for Royalty Management, approved. Despite his promotion, Maxwell remained a plaintiff in the current suit.

Subsequent to Maxwell's promotion, two of the four Supervisory Auditors in the Dallas Compliance Division of the MMS retired. After each retirement, Johnson elected to eliminate the position, as opposed to hiring a successor. Johnson's decision in this regard was consistent with agency-wide down-sizing and streamlining, and Johnson confirmed with Lucy Querques-Dennet, Shaw's replacement, that realignment in this manner was wholly within his discretion. Johnson also obtained the unanimous approval of the remaining Supervisory Auditors (including Maxwell) when he decided to reduce the total number of Supervisory Auditors.

---

[1] Counsel for the DOI admitted at oral argument that Johnson considered only Arnold, McDaniel, and Maxwell in selecting Reiger's replacement.

Convinced that this realignment was actually a form of retaliation against them, Arnold and McDaniel amended their complaint to state a claim for retaliation. The trial court granted summary judgment to the DOI on the retaliation claim on July 26, 1997. And at a pretrial hearing on April 14, 1999, the district court determined that neither Arnold nor McDaniel could present evidence at trial supporting their claim for compensatory damages because Maxwell's promotion precluded both Arnold and McDaniel from proving that they would have netted the job "but for" the discrimination. After a trial ending on April 23, 1999, the jury found in favor of Arnold, McDaniel, and Maxwell on their race and gender discrimination claims and awarded Maxwell $300,000 in compensatory damages.[2] The jury specifically rejected the DOI's defense that it would have failed to hire Arnold and McDaniel even if gender had not been a consideration. The district court awarded attorneys' fees and costs to the plaintiffs.

Arnold and McDaniel, though not Maxwell, timely filed this appeal.

## II.    Standard of Review

Both the decision that, as a matter of law, Arnold and McDaniel could not prove that they would have obtained the job "but for" the discrimination and the grant of summary judgment on

---

[2]     The jury had actually awarded Maxwell $450,000, but the district court capped that amount pursuant to Title VII's limitations on damages.

4

the retaliation claim are issues of law to which we apply <u>de</u> <u>novo</u> review.  <u>See</u> <u>Hall v. Thomas</u>, 190 F.3d 693, 695 (5th Cir. 1999) (summary judgment); <u>Randel v. United States Dep't of the Navy</u>, 157 F.3d 392, 395 (5th Cir. 1998) ("Questions of law we review <u>de</u> <u>novo</u>.").

The district court should grant summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. Proc. 56(c); <u>see</u> <u>also</u> <u>Christopher Village, LP v. Retsinas</u>, 190 F.3d 310, 314 (5th Cir. 1999).  "An issue is genuine if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party."  <u>Owsley v. San Antonio Indep. Sch. Dist.</u>, 187 F.3d 521, 523 (5th Cir. 1999), <u>petition</u> <u>for</u> <u>cert.</u> <u>filed</u> (Jan. 18, 2000) (No. 99-1205).  "Although we consider the evidence and all reasonable inferences to be drawn therefrom in the light most favorable to the nonmovant, the nonmoving party may not rest on the mere allegations or denials of its pleadings, but must respond by setting forth specific facts indicating a genuine issue for trial."  <u>Rushing v. Kansas City S. Ry. Co.</u>, 185 F.3d 496, 505 (5th Cir. 1999), <u>petition</u> <u>for</u> <u>cert.</u> <u>filed</u> (Dec. 28, 1999) (No. 99-1090).

### III.    <u>Compensatory Damages</u>

Arnold and McDaniel argue that the district court erred when it forbade them from presenting evidence on their claim for compensatory damages and refused to submit the same to the jury. Specifically, Arnold and McDaniel assert that, because the jury rejected the DOI's mixed motive defense, they are therefore entitled to compensatory damages.

The DOI retorts that the district court acted properly because compensatory damages are not available to plaintiffs who cannot show that discrimination was the "but for" cause of the failure to hire. The DOI further argues that the jury verdict, coming as it did on the heels of the district court's dismissal of Arnold and McDaniel's claims for compensatory damages, is a nullity.

Title 42 U.S.C. § 1981a(a)(1) states "In an action brought by a complaining party under . . . [§ 2000e-5] against a respondent who engaged in unlawful intentional discrimination . . . prohibited under . . . [§ 2000e-2] . . . , the complaining party may recover compensatory and punitive damages . . ., in addition to any relief authorized by . . . [§ 2000e-5(g)]." This is the language that Arnold and McDaniel claim presumptively entitles them to compensatory damages.[3] They also urge us to

---

[3] Arnold and McDaniel also rely on three EEOC agency decisions. See Miller v. Babbit, 1999 WL 716389 (EEOC); Harris v. Glickman, 1998 WL 897680 (EEOC); Deauzat v. Dalton, 1997 WL 241520 (EEOC). These cases, broadly speaking, stand for the proposition that, "even if a victim of a discriminatory selection process is not awarded the position during re-selection, he is nonetheless entitled to compensatory damages, if proven, for having been subjected to a discriminatory selection process in the first

follow <u>Willson v. Shannon</u>, 857 F. Supp. 34 (S.D. Tx. 1994), <u>aff'd</u>

<u>in</u> <u>part</u>, 77 F.3d 473 (5th Cir. 1995) (unpublished), which, in the

course of denying a motion for a new trial, rejected the argument

that because "only one . . . position had been available for

either Plaintiff to fill, and that only one of the Plaintiffs

could have obtained the position even in the absence of

discrimination, . . . only one Plaintiff should be able to

recover damages[.]" <u>Id.</u> at 35. The court condemned this

argument as it "would allow . . . discriminat[ion] with respect

to any given position with impunity for near perpetuity, once

[the agency] has become liable for discriminating once." <u>Id.</u>[4]

However, what <u>Willson</u> does not even mention (indeed <u>Willson</u>

---

instance." <u>Miller</u>, 1999 WL 716389, at *4. However, one of the cases permits an award of compensatory damages only "up until . . . the date on which the AJ issued her RD finding that Complainant A was the best qualified candidate and would have been selected for the position absent the agency's discrimination." <u>Harris</u>, 1998 WL 897680, at *3. In other words, even under the EEOC decisions, Arnold and McDaniel could not recover compensatory damages past the date on which Maxwell received the position of Supervisory Auditor.

"An agency's construction of a statute it is charged with enforcing is entitled to deference if it is reasonable and not in conflict with the expressed intent of Congress." <u>United States v. Riverside Bayview Homes, Inc.</u>, 747 U.S. 121, 131 (1985); <u>Gomez v. Department of the Air Force</u>, 869 F.2d 852, 860 (5th Cir. 1989) (same). To the extent that these EEOC decisions conflict with § 2000e-5(g)(2)(B)(ii), they are neither binding nor entitled to deference.

[4] Even were <u>Willson</u> persuasive, it is not binding for four reasons. First, though <u>Willson</u> was affirmed in part in an unpublished opinion, pursuant to Local Rule 47.5.3, "[u]npublished opinions issued before January 1, 1996 . . . . should normally be cited only when the doctrine of res judicata, collateral estoppel or law of the case is applicable." None of those doctrines is relevant here. Second, the unpublished affirmance did not discuss <u>Willson</u>'s reasoning, but instead merely found the denial of a motion for new trial to be not plain error. Third, <u>Willson</u> itself is factually distinguishable, involving, as it appears to, successive denials of an open job position to female applicants. Finally, as is detailed below, <u>Willson</u> conflicts with language in <u>De Volld v. Bailar</u>, 568 F.2d 1162 (5th Cir. 1978), and, under the rule of orderliness, to the extent that a more recent case contradicts an older case, the newer language has no effect. <u>See</u> <u>Teague v. City of Flower Mound, Texas</u>, 179 F.3d 377, 383 (5th Cir. 1999).

7

cites no law in support of its position), and what the DOI highlights, is § 2000e-5(g)(2)(B)(ii), which states: "On a claim in which . . . the respondent demonstrates that [it] would have taken the same action in the absence of the impermissible motivating factor, the court . . . . shall not award damages[.]" This section establishes what is known as "the mixed motive defense." The DOI insists that this language absolves it of liability for compensatory damages to Arnold and McDaniel because the DOI would not have hired Arnold and McDaniel regardless of their gender for the simple reason that it promoted Maxwell instead. The DOI also relies on De Volld v. Bailar, 568 F.2d 1162 (5th Cir. 1978), in which a panel of this circuit stated:

> It must be kept in mind that only one person could be promoted to the position in question. Both Mexican-American clerks [Trevino and De Volld] were concededly treated discriminatorily in that both were passed over because of their national origin. But the blunt fact remains that only one of the two if either could receive the promotion. When the Civil Service Commission determined that the deserving candidate was Trevino . . ., it became indisputable that whatever discrimination [De Volld] suffered because of her national origin, that discrimination no longer kept her from the promotion. Put another way, whatever motives the Commission may have had in choosing between two people of the same ethnic origin, discrimination cannot have been among them. . . . In this case the administrative award to [Trevino] removes any possibility that [De Volld] can prove that her situation is due to discrimination against her as a Mexican-American.

Id. at 1164-65; see also Pollard v. Grinstead, 741 F.2d 73, 75 (4th Cir. 1984) ("Pollard . . . did not . . . prove that the agency discriminated against him when it [decided] . . . that

8

Webb was better qualified.  Pollard was refused promotion, in the words of the statute, for a 'reason other than discrimination.' The absence of discrimination when the agency weighed the qualifications of the two applicants bars relief." (quoting § 2000e-5(g))); Burks v. City of Philadelphia, 950 F. Supp. 678, 689 (E.D. Pa. 1996) ("[F]ederal appellate courts have followed the rule that an employee should be denied damages if her qualifications relative to another candidate were such that he or she would not have received the position.").

The statutory language and the case law set forth the rule plainly enough: among multiple job applicants who fail to secure the position because of discrimination, only those who can prove that they would have gotten the position but for the discrimination can recover compensatory damages.  Arnold and McDaniel are not candidates who, but for the discrimination, would have received the Supervisory Auditor position for the following reasons: (1) only one position was open; (2) Johnson considered only Arnold, McDaniel, and Maxwell in selecting Reiger's replacement; and (3) neither Arnold nor McDaniel contend that a discriminatory motivation tainted Johnson's selection of Maxwell.  Moreover, it flies in the face of all reason that all three would have been chosen for only one position.  For these reasons, Arnold and McDaniel cannot show that they would have garnered the job but for the discrimination and consequently cannot demonstrate that they are entitled to compensatory

9

damages.  Therefore, the district court did not err.

Arnold and McDaniel emphasize the jury's special finding that the DOI would have hired them if gender had not been a motivating factor precludes the DOI's reliance on the mixed motive defense.  The jury's special interrogatory, however, is not determinative of this issue.  Whether Arnold and McDaniel could recover compensatory damages "was a matter of statutory interpretation . . . properly decided by the court[.]" United States v. Nolan, 136 F.3d 265, 271 (2d Cir. 1998).  Having correctly determined that § 2000e-5(g)(2)(B)(ii) precluded Arnold and McDaniel's entitlement to compensatory damages, the court definitively disposed of the matter; a subsequent jury pronouncement on an issue no longer in the case is of no effect.

We therefore find that the district court did not err in ruling, as a matter of law, that Arnold and McDaniel could not recover compensatory damages.

## IV.    Retaliation

Arnold and McDaniel identify the realignment as a form of retaliation because it foreclosed promotion opportunities for them, and it increased their workload.  The DOI counters that the realignment is not an ultimate employment decision, and therefore, not an adverse action sufficient to state a prima facie claim for retaliation.  Moreover, the DOI urges that no causal link exists between Arnold and McDaniel's protected

10

activity and the realignment.

To state a claim for retaliation, a plaintiff must prove that: (1) he engaged in protected activity pursuant to Title VII; (2) he suffered an adverse employment action; and (3) a causal nexus exists between the protected activity and the adverse employment action. See Messed v. Men, 130 F.3d 130, 140 (5th Cir. 1997). Assuming arquendo that the realignment can be properly characterized as an adverse employment action, Arnold and McDaniel have not established any causal link between their protected activity and the realignment. Though they argue vigorously that Johnson flouted agency procedures for conducting the realignment, Johnson, in fact, had total discretion in making the adjustment. Even so, Johnson obtained the approval of his superior and the other Supervisory Auditors before eliminating the positions. The unexpected retirements of two Supervisory Auditors—not the protected activity of Arnold and McDaniel—appears to have prompted the realignment, and Arnold and McDaniel present no evidence inconsistent with that proposition. Therefore, the district court did not err when it granted the DOI summary judgment on the retaliation claim.

## V.   Conclusion

Because we find that the plain language of § 2000-e5(g)(2)(B)(ii) forbids an award of compensatory damages to a job applicant who, despite unlawful discrimination, still would not

11

have received the job, we hold that the district court did not err when it ruled as a matter of law that Arnold and McDaniel were not entitled to compensatory damages.

We further hold that Arnold and McDaniel did not demonstrate a causal link between their protected activity and the realignment that foreclosed their opportunities for promotion. The district court therefore did not err when it granted the DOI's motion for summary judgment on the retaliation claim.

AFFIRMED

12