IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 01-50319

Summary Calendar
_____


EMMA PATRICK

                              Plaintiff - Appellant

v.


ANTHONY J. PRINCIPI, SECRETARY OF THE U.S. DEPARTMENT OF
VETERANS AFFAIRS

                              Defendant - Appellee

_____

Appeal from the United States District Court
for the Western District of Texas, Waco Division
No. W-00-CA-98
_____
October 5, 2001

Before KING, Chief Judge, and HIGGINBOTHAM and BENAVIDES, Circuit
Judges.

PER CURIAM:[*]

    In district court, Plaintiff-Appellant Emma Patrick asserted

racial discrimination and retaliation claims pursuant to Title

VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §

_____

    [*]    Pursuant to 5TH CIR. R. 47.5, the court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in 5TH CIR. R.
47.5.4.

2000e et seq..  Patrick appeals from the district court's grant
of summary judgment in favor of Defendant-Appellee Anthony J.
Principi, Secretary of the United States Department of Veterans
Affairs (the "Secretary").  For all the following reasons, we
AFFIRM the judgment of the district court.


## I.  Factual and Procedural History

Patrick, an African-American, is currently employed by the
United States Department of Veterans Affairs at the Temple
Integrated Care Facility as a "Nurse II."  On March 11, 1996,
Patrick was not selected for a position as an Evening/Relief
Nursing Supervisor.  On April 24, 1996, Patrick contacted an
Equal Employment Opportunity ("EEO") Counselor to pursue an
informal employment discrimination complaint regarding the March
11 non-selection.  This complaint never matured into a law suit.

Meanwhile, on March 27, 1996, the Nurse Professional
Standards Board ("NPSB") evaluated Patrick's annual proficiency
report and personnel file for a possible promotion to the grade
of "Nurse III."  For promotion to Nurse III, a candidate's record
must satisfy numerous, specific criteria listed in the Nurse
Qualifications Standards.  The NPSB determined that Patrick did
not meet Nurse III criterion 2b and criterion 3 and requested
supplemental information regarding Patrick's qualifications.[1]  On

---

[1]  Criterion 2b requires "demonstrated ability to initiate
and lead interdisciplinary groups."  Criterion 3 requires

May 17, 1996, Patrick's nurse manager submitted supplemental information concerning Patrick's qualifications on Nurse III criteria 2b and 3 to the NPSB as requested. On June 5, 1996, the NPSB re-evaluated Patrick for promotion to Nurse III. Despite the supplemental information, the NPSB recommended against promotion. On that same date, the NPSB also found two other Nurse III candidates ineligible for promotion.

Patrick filed suit in district court against the Secretary. Patrick asserted that the NPSB's failure to promote her to Nurse III was the result of unlawful racial discrimination and was in retaliation for her April 24 informal EEO complaint (regarding a separate matter). The Secretary filed a motion for summary judgment which the district court granted on February 8, 2001. The district court concluded that Patrick failed to establish a prima facie case of employment discrimination and of retaliation. Furthermore, the district court found that Patrick did not rebut the Secretary's legitimate, non-discriminatory reason for declining to promote Patrick to Nurse III.

## II.  Summary Judgment Standard of Review

We review a grant of summary judgment de novo, applying the same standards as the district court. See Chaney v. New Orleans Pub. Facility Mgmt., Inc., 179 F.3d 164, 167 (5th Cir. 1999).

"[s]ignificant and sustained contributions to the nursing profession."

Summary judgment is proper when "there is no genuine issue as to any material fact and [] the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). While we view the evidence in a light most favorable to the non-movant, see Coleman v. Houston Indep. Sch. Dist., 113 F.3d 528, 533 (5th Cir. 1997), in order to avoid summary judgment, the non-movant must go beyond the pleadings and her own affidavits and come forward with specific facts indicating a genuine issue for trial, see Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

If the evidence is such that a reasonable jury could return a verdict for the non-movant, there is a genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Therefore, if the non-movant fails to establish facts in support of an essential element of her prima facie claim, summary judgment is appropriate. See Celotex, 477 U.S. at 322-23.

### III. Title VII Discrimination

A. The Law

Under Title VII, it is unlawful for an employer to make an adverse employment decision concerning any individual on the basis of the individual's race. 42 U.S.C. § 2000e-2(a)(1). We analyze Title VII claims under the well-established framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under

4

McDonnell Douglas, the Title VII plaintiff bears the initial burden of proving a prima facie case of discrimination by a preponderance of the evidence. See id. at 802; Shackelford v. Deloitte & Touche, L.L.P., 190 F.3d 398, 404 (5th Cir. 1999). To establish a prima facie case of discriminatory non-promotion, the plaintiff must show that: (1) she belongs to a protected group, (2) she was qualified for the position in question, (3) she was not promoted, and (4) the position was filled by someone outside the protected class. Oden v. Oktibbeha County, 246 F.3d 458, 468 (5th Cir. 2001). See also Blow v. City of San Antonio, 236 F.3d 293, 296 (5th Cir. 2001) (citing Tex. Dept. of Cmty. Affairs v. Burdine, 450 U.S. 248, 252-53 (1981)).

If the plaintiff establishes a prima facie case of discrimination, the burden shifts "to the employer to articulate some legitimate, nondiscriminatory reason for the employee's rejection." McDonnell Douglas, 411 U.S. at 802; see also Shackelford, 190 F.3d at 404. At that point, "the McDonnell Douglas framework – with its presumptions and burdens – disappear[s], and the sole remaining issue [is] discrimination vel non." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142-43 (2000) (citations and quotation marks omitted). However, if the plaintiff shows that the employer's proffered justification is mere pretext, that showing, coupled with the prima facie case, is sufficient to survive summary judgment in most cases. Id. at 148.

5

"Although intermediate evidentiary burdens shift back and forth under this framework, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" Id. at 143 (quoting Burdine, 450 U.S. at 253). To carry that burden, the plaintiff must produce substantial evidence of pretext: "Evidence that the proffered reason is unworthy of credence must be enough to support a reasonable inference that the proffered reason is false; a mere shadow of doubt is insufficient." Bauer v. Albemarle Corp., 169 F.3d 962, 967 (5th Cir. 1999)(quoting E.E.O.C. v. La. Office of Cmty. Servs., 47 F.3d 1438, 1444 (5th Cir. 1995)). This court has consistently held that an employee's "subjective belief of discrimination" alone is not sufficient to warrant judicial relief. Bauer, 169 F.3d at 967.[2]

B.  The Analysis

The parties do not dispute that Patrick belongs to a protected group and was the subject of an adverse employment decision. Thus, Patrick satisfies elements one and three of her prima facie case of discriminatory non-promotion. Neither party presents evidence on whether the position was filled by a non-African American, but since all the proficiency reports in the

_____

[2] Even though Bauer was decided before Reeves, nothing in Reeves abrogates Bauer's requirement of substantial evidence to support a claim of pretext. See Auguster v. Vermilion Parish Sch. Bd., 249 F.3d 400, 403 n.3 (5th Cir. 2001).

record indicate that the nurses promoted to Nurse III were Caucasian, we can assume that Patrick satisfies this element as well.  Thus, Patrick has established three out of the four elements necessary for a prima facie case of discriminatory non-promotion.

However, Patrick fails to establish the remaining element, i.e., that she is qualified for a promotion to Nurse III. Patrick's file, including supplemental information, did not satisfy criterion 2b or criterion 3 of the Nurse Qualification Standards on either March 27 or June 5.

With respect to criterion 2b, the NPSB asserts that Patrick's file did not show the required "demonstrated ability to initiate and lead interdisciplinary groups."  Patrick counters this by citing her self-initiated proposals to identify visually impaired hospital patients with arm bands and to hold classes for chemotherapy patients.  However, as of June 5, the most recent date Patrick was evaluated for a Nurse III promotion, neither of those proposals had been implemented or evaluated by the hospital.  Moreover, Patrick's strong belief in her ability to initiate and lead interdisciplinary groups is insufficient to contradict an employer's negative assessment to the contrary. Gustovich v. AT&T Communications, Inc., 972 F.2d 845, 848 (5th Cir. 1992).  Thus, Patrick has not raised a genuine issue of material fact concerning her qualifications under criterion 2b.

With respect to criterion 3, the NPSB asserts that Patrick's file did not show the required "[s]ignificant and sustained contributions to the nursing profession."  In response, Patrick argues that her community involvement, including her volunteer work with the American Red Cross and the American Cancer Society, satisfies this criterion.  Patrick suggests that other nurses promoted to Nurse III have been deemed to satisfy criterion 3 with similar accomplishments.  After reviewing the criterion 3 qualifications of the other promoted nurses, however, we find that Patrick's credentials under this criterion are not as extensive as the other Nurse III promotees.  Unlike Patrick's proficiency report, the proficiency reports of the promoted nurses show significant participation in professional nursing groups and the continuing education of doctors and nurses.  Again, Patrick's honest belief in her own qualifications is not enough to overcome the NPSB's determination to the contrary.  Gustovich, 972 F.2d at 848.  Thus, Patrick has not raised a genuine issue of material fact concerning whether she was qualified for the promotion to Nurse III and, therefore, has failed to establish an element of her prima facie case of employment discrimination.

C.  NPSB'S Legitimate, Nondiscriminatory Reason

Even assuming that Patrick can establish a prima facie case of discrimination, Patrick still cannot prevail on the discrimination claim.  The Secretary asserts that Patrick was not

8

promoted to Nurse III because she was not qualified for the position.  To rebut this legitimate, nondiscriminatory reason for the NPSB's employment decision, Patrick must present substantial evidence of pretext.  Bauer, 169 F.3d at 967.  Patrick fails to meet this burden.

The undisputed summary judgment evidence indicates that neither the NPSB nor the selecting official considered Patrick's race in determining that she was not qualified for promotion. Patrick presents no concrete evidence  that suggests discrimination.  Rather, she bases her claim of discrimination on mere speculative assertions concerning the manner in which the NPSB makes employment decisions.  Conclusory assertions and subjective beliefs are insufficient to support a claim of employment discrimination.  See Lawrence v. Univ. of Tex. Med. Branch at Galveston, 163 F.3d 309, 313 (5th Cir. 1999) (holding that plaintiff's subjective belief of racial discrimination is insufficient to raise an inference of discrimination and could not survive summary judgment); Grimes v. Tex. Dep't of Mental Health and Retardation, 102 F.3d 137, 140 (5th Cir. 1996)(holding that "unsubstantiated assertions are not competent summary judgment evidence").

To avoid summary judgment, Patrick must raise a genuine issue of material fact concerning whether the Secretary's proffered reason for the employment decision was pretextual. Lawrence, 163 F.3d at 312.  While Patrick disagrees with the

9

NPSB's evaluation of her qualifications, such agreement is not equivalent to the establishment of a discrimination case. Shackelford, 190 F.3d at 408. Thus, Patrick fails to establish that the Secretary's reason for the employment decision was pretextual, so she has not carried her ultimate burden on the discrimination claim.

## IV. Title VII Retaliation

A. The Law

To support a Title VII retaliation claim, the plaintiff must show that: (1) she engaged in a protected activity, (2) an adverse employment action occurred, and (3) a causal link exists between her participation in the protected activity and the adverse employment action. See Arnold v. U.S. Dep't of Interior, 213 F.3d 193, 198 (5th Cir. 2000). "Protected activity" is defined as opposition to any practice rendered unlawful by Title VII, including making a charge, testifying, assisting, or participating in any investigation, proceeding, or hearing under Title VII. See 42 U.S.C. § 2000e-3(a) (2001); Evans v. City of Houston, 246 F.3d 344, 352-53 (5th Cir. 2001). "Adverse employment actions" include only "ultimate employment decisions . . . 'such as hiring, granting leave, discharging, promoting, and compensating.'" Walker v. Thompson, 214 F.3d 615, 629 (5th Cir. 2000) (quoting Dollis v. Rubin, 77 F.3d 777, 782 (5th Cir.

10

1995)).  A "causal link" exists when "'the employer's decision to terminate was based in part on knowledge of the employee's protected activity.'"  Medina v. Ramsey Steel Co., Inc., 238 F.3d 674, 684 (5th Cir. 2001) (citing Sherrod v. Am. Airlines, Inc., 132 F.3d 1112, 1122 (5th Cir. 1998)).  Thus, to demonstrate the required causal link for a prima facie case, the plaintiff need not prove that her protected activity was the sole factor motivating the employment decision.  See Long v. Eastfield Coll., 88 F.3d 300, 305 n.4 (5th Cir. 1996).

The framework for analyzing a retaliation claim "is the same as that used in the employment discrimination context."  Rios v. Rossotti, 252 F.3d 375, 380 (5th Cir. 2001).  Once the plaintiff establishes a prima facie case of unlawful retaliation, the burden shifts to the defendant to articulate a legitimate, nonretaliatory reason for the adverse employment action.  Id.  To prevail, the plaintiff must present "sufficient evidence that would permit a reasonable trier of fact to find that the proffered reason is a pretext for retaliation."  Sherrod, 132 F.3d at 1122.

Ultimately, the plaintiff "must show that 'but for' the protected activity, the adverse employment action would not have occurred."[3]  Seaman v. CSPH, Inc., 179 F.3d 297, 301 (5th Cir.

---

[3]  "[T]he ultimate issue in an unlawful retaliation case-- whether the defendant discriminated against the plaintiff because the plaintiff engaged in conduct protected by Title VII--seems identical to the third element of the plaintiff's prima facie

11

1999).  Thus, even if retaliation was a motivating factor in the non-selection of plaintiff, "no liability for unlawful retaliation arises if the employee would [not have been selected] even in the absence of the protected conduct."  Long, 88 F.3d at 305 n.4.  We afford a great deal of deference to employers in their hiring and promotion decisions.  Rios, 252 F.3d at 380.

B.  The Analysis

The parties do not dispute that Patrick engaged in a protected activity when she spoke to the EEO Counselor on April 24, 1996, or that Patrick experienced an adverse employment action when she was not selected for promotion by the NPSB. Thus, Patrick satisfies elements one and two of her prima facie case of retaliation.  To establish the remaining element, Patrick must show a causal link between her protected activity and the adverse employment action.  See Arnold, 213 F.3d at 198.

Patrick fails to establish this causal link for two reasons.[4]  First, the timing of Patrick's protected activity

_____

case--whether a causal link exists between the adverse employment action and the protected activity. However, the standards of proof applicable to these questions differ significantly."  Long, 88 F.3d at 305 n.4 (emphasis in original).  The causal link element requires that the employment decision be "based in part on knowledge of the employee's protected activity", Medina, 238 F.3d at 684, while the ultimate issue is a 'but-for' inquiry, see Seaman, 179 F.3d at 301.

[4]  In its Memorandum Opinion and Order (pp. 10-12), the district court considers the first of these reasons to be related to the first element of a retaliation claim and the second reason to be related to the third element.  We think it makes more sense to treat both of these reasons under the causal link element.

12

weakens the causal link between the activity and the non-selection for promotion. On March 27, the NPSB first decided that Patrick was not qualified for promotion to Nurse III. This decision was made before Patrick met with the EEO Counselor on April 24 and, therefore, is wholly unrelated to any protected activity. Since Patrick's qualifications, or lack thereof, did not materially change from March 27 to June 5, the NPSB's March 27 decision shows that Patrick most likely would not have been promoted on June 5, even if she never engaged in any protected activity.

Second, the NPSB's members' lack of knowledge regarding Patrick's protected activity weakens any causal link between the activity and the non-selection for promotion. Of the three NPSB members participating in the June 5 decision, only one knew of Patrick's meeting with the EEO Counselor. Furthermore, Patrick presents no evidence that the selecting official in charge of ratifying the NPSB's decisions, Mr. Michael Harwell, knew of her protected activity. It is undisputed that the NPSB did not discuss Patrick's protected activity at its June 5 meeting and that the NPSB members never discussed Patrick's protected activity with Mr. Harwell. For these reasons, Patrick fails to raise a genuine issue of material fact regarding a causal link between her EEO activities and her non-selection for promotion. Thus, Patrick failed to establish an element of her prima facie case of retaliation.

13

C.  NPSB'S Legitimate, Nonretaliatory Reason

Even assuming that Patrick can establish a prima facie case of retaliation, Patrick still cannot prevail on the retaliation claim.  The Secretary asserts a legitimate, nonretaliatory reason for the NPSB's employment decision, i.e., that Patrick was not promoted to Nurse III because she was not qualified for the position.  To rebut this statement, Patrick must present substantial evidence of pretext.  Bauer, 169 F.3d at 967.  Patrick fails to meet this burden.[5]

The undisputed summary judgment evidence indicates that neither the NPSB nor the selecting official considered Patrick's protected activity in determining that she was not qualified for promotion.  Patrick bases her claim of retaliation on mere speculative assertions, but conclusory assertions and subjective beliefs are insufficient to support a retaliation claim.  Travis v. Board of Regents of the Univ. of Tex. Sys., 122 F.3d 259, 266 (5th Cir. 1997) (holding that plaintiff's assertion of retaliation "is merely her own subjective belief, which is insufficient to create a jury question").

To avoid summary judgment, Patrick must raise a genuine issue of material fact concerning whether the Secretary's

---

[5]    This discussion is closely analogous to the discussion regarding the Secretary's legitimate, nondiscriminatory reason for Patrick's non-promotion.  See supra, Section III(C).  This is because the framework for analyzing a retaliation claim "is the same as that used in the employment discrimination context."  Rios, 252 F.3d at 380.

14

proffered reason for the employment decision was pretextual. Lawrence, 163 F.3d at 312. While Patrick disagrees with the NPSB's evaluation of her qualifications, such agreement is not equivalent to the establishment of a retaliation case. Shackelford, 190 F.3d at 408. Thus, Patrick fails to establish that the Secretary's reason for the employment decision was pretextual. Moreover, there can be no liability in a retaliation case if the non-selection for promotion would have occurred regardless of Patrick's protected activity. See Long, 88 F.3d at 305 n.4. Patrick has not established that she would have been promoted but for her protected activity, so she has not carried her ultimate burden on the retaliation claim.

## V. Conclusion

For all the foregoing reasons, we find that the district court properly granted summary judgment for the Secretary. Patrick fails to raise any genuine issues of material fact concerning her discrimination or retaliation claims.

AFFIRMED.

15